**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ROBERT SCHUTTE,**

           **Plaintiff,**

**-vs-**                                     **Case No.  6:06-cv-291-Orl-18DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

           **Defendant.**

_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **AFFIRMED.**

### *I. BACKGROUND*

**A.     Procedural History**

Plaintiff filed for a period of disability, DIB and SSI benefits on August 28, 2002.  R. 106-22. He alleged an onset of disability on June 18, 2002, due to due to a pinched nerve, arthritis, muscle spasms, sciatica, and a herniated disc. R. 106, 109, 125.  His application was denied initially and upon reconsideration. R. 49, 52, 54.  Plaintiff requested a hearing, which was held on July 14, 2003, before

Administrative Law Judge Franklin D. Holder. R. 44, 387-420. In a decision dated November 14, 2003, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 34-44. Plaintiff submitted additional evidence and timely filed a Request for Review of the ALJ's decision, which was granted. R. 45-48, 160-62. The Appeals Council vacated the ALJ's decision and remanded the case to another ALJ with instructions to give further consideration to the medical evidence, Plaintiff's mental status and Residual Functional Capacity (RFC) and obtain vocational expert (VE) testimony to clarify the effect of limitations on Plaintiff's occupational base. R. 45-48[1].

Following the second hearing on February 22, 2005, Administrative Law Judge Robert Droker (hereinafter referred to as "ALJ"), issued a decision dated May 24, 2005, finding Plaintiff not disabled R. 15-27, 421-72. Neil Lewis, Ph.D., testified as a psychologist medical expert, and A. Mark Capps testified as a vocational expert. R. 95-98, 421-22, 424-37, 462-70. The second ALJ decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on January 19, 2006. R. 7-9. Plaintiff filed this action for judicial review on March 7, 2006. Doc. No. 1.

### B. Medical History and Findings Summary

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of pinched nerve, arthritis, muscle spasms, sciatica, and a herniated disc. Plaintiff also alleged during the hearing that he suffered anxiety and panic attacks. R. 125, 400-04. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from a disorder of the spine, anxiety/affective disorder, ans substance abuse disorder, which were "severe" medically determinable impairments, but not impairments severe enough to meet or

---

[1] The Appeals Council noted that Plaintiff filed other claims for SSI and DIB benefits on December 29, 2003, and the Appeals Council associated the claims together.

medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 25, Finding 3. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform a limited range of light work, as he could lift ten pounds occasionally, required a sit/stand option due to low back pain, and had to alternate between sitting, standing and walking at least every 15 minutes and postural limitations; had to avoid ladders or unprotected heights, and heavy moving machinery; and due to his mental impairments, he requires a low stress position with limited contact with the public. R. 26. In making this determination, the ALJ found that Plaintiff's allegations regarding his limitations were not totally credible for the reasons set forth in the body of the decision.[2] R. 26, Finding 5.

Plaintiff has past relevant work experience as an invoice clerk, news assistant and telemarketer. R. 126, 393-96, 463-65. Based upon Plaintiff's RFC, the ALJ determined that he could not perform past relevant work. R. 26. Considering Plaintiff's vocational profile and RFC, the ALJ relied on vocational expert testimony to decide that Plaintiff was not disabled, accepting the VE's testimony, in response to a hypothetical question, that a person with Plaintiff's limitations could work as a warehouse clerk, an assembler of small parts, a table worker, and an addresser. R. at 25-26. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 26.

Plaintiff now asserts three points of error. First, he argues that the ALJ erred in finding that Plaintiff could perform the duties of a "low stress position with limited contact with the public," which amounts to an unreviewable (and, presumably, in Plaintiff's view therefore erroneous) decision.

---

[2] Within the body of the decision, the ALJ relied heavily on the opinion of Dr. Lewis, the reviewing psychological medical expert who opined Plaintiff the "fake bad" or malingerer results on psychological testing were accurate, other repeated medical references to malingering, and references to exaggerating his symptoms. R. 20-23.

Second, he claims the ALJ erred in assessing his mental residual functional capacity by endorsing Dr. Lewis's opinions, but omitting them from the ALJ's hypothetical and mental RFC. Third, Plaintiff contends the ALJ erred by relying on "demonstrably incorrect VE testimony that the VE testified was consistent with the Dictionary of Occupational Titles, but was not. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II. STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401.

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery*

*v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### *III. ANALYSIS*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). In this case, the ALJ reached the fifth step and determined that Plaintiff could perform other work that exists in the national economy.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having severe hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make specific and well-articulated findings as to the

effect of the combination of impairments when determining whether an individual is disabled. *Id.*, 985 F.2d at 534.

### A.   "Low-stress" work

Plaintiff contends the ALJ's mental RFC finding – that Plaintiff could perform the duties of a "low stress position with limited contact with the public" – is unreviewable because there is no such thing as a "low-stress" job. Plaintiff cites SSR 85-15, in contending that stress does not inhere in the nature of a job, but is the response of an individual to a particular trigger:

> The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day. A person may become panicked and develop palpitations, shortness of breath, or feel faint while riding in an elevator; another may experience terror and begin to hallucinate when approached by a stranger asking a question. Thus, the mentally impaired may have difficulty meeting the requirements of even so-called "low-stress" jobs.

SSR 85-15; *see also Allen v. Barnhart*, 417 F.3d 396, 406-07 (3d Cir. 2005) (enforcing SSR 85-15's rule regarding stress). Plaintiff argues that, because according to SSR 85-15 there is no such thing as a low-stress job, the ALJ's mental residual functional capacity finding is unreviewable.

Plaintiff also argues that the VE's testimony in response to a hypothetical question, including a low-stress limitation, did not cure the defect in the ALJ's decision. The ALJ posed a hypothetical question to the VE, including a restriction to a "low-stress environment" (R.465); however, the VE did not seek clarification from the ALJ as to the meaning of "low-stress environment" and his initial answer to a question that included that the "low-stress" restriction resulted in error, according to Plaintiff.

The vocational expert responded on cross-examination with regard to "low stress":

> Q. And the judge's hypothetical also included low stress. Are the quotas impacted by low stress or does low stress get impacted by the quotas?
>
> A. Well, stress . . . is defined in the DOT clearly as a mental, non-exertional, mental condition. Stress is relegated to those positions like an emergency room physician, a 911 operator, and when we look at low-stress jobs, we look at something that is simple, one, two-step tasks, and that would be unskilled work. Stress by nature is not inherent in low, low, unskilled work. What [INAUDIBLE] a situation is that what may be stressful to one is that stressful one person and not to another.

R. 469-70.

Plaintiff complains that the VE identified only jobs that did not involve *high* stress, such as an emergency room physician or 911 operator, rather than strictly "low-stress environment" jobs and if the ALJ had meant to exclude only such "high stress" jobs, he would have asked the VE to assume "not that the person could do low-stress jobs, but that the person could do all jobs that do not involve high stress, which would include average stress as well as low-stress jobs." Doc. No. 19. Plaintiff also argued that excluding only high stress jobs would ignore medical expert Dr. Lewis's assessment that Plaintiff's ability to deal with "work stress" was "poor" and Plaintiff needed a "low-stress environment." R. at 431.

Plaintiff further contends that the ALJ's decision was error and not based on substantial evidence from the VE, who gave contradictory responses to the question about stress in testifying that "low-stress jobs" are "simple, one, two-step tasks, and that would be unskilled work" which are by their very nature low stress (R. 470); Plaintiff contends this contradicts SSR 85-15's rule that an ALJ must not equate low-stress work with the skill level of that work. Doc. No 19 (citing SSR 85-15 ("Because response to the demands of work is highly individualized, the skill level of a position is not

-7-

necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job")). Plaintiff argues that the VE's made contradictory statements about stress — that low-stress work is unskilled and that there is no necessary correlation between stress and the skill level of work.

The Commissioner responds that the VE's testimony on the "low-stress" point was detailed and he testified that the limitation would not conflict with the jobs he identified of warehouse clerk (78,000 nationally, 4,200 statewide), assembler of small parts (111,000 nationally, 3,200 statewide), table worker (126,000 nationally, 3,500 statewide), and addresser (56,000 nationally, 4,100 statewide). R. 25, 465-66. The Commissioner argues that the ALJ did not conclude that all unskilled work somehow equaled "low stress" work or that there is "no such thing as a low-stress job." The SSR merely acknowledges that a response to work demands is "highly individualized" and the "skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job." Doc. No. 23. The Commissioner contends the VE attempted to provide clarifying information during the hearing (R. 470) and did not identify only jobs that "did not involve high stress" as Plaintiff alleges.

As the Commissioner points out, the ALJ did more than simply conclude that all unskilled work somehow equaled "low stress" work. The ALJ's hypothetical to the VE specifically included limitations that Plaintiff have limited contact with the public; and the proposed positions be low stress in nature. R. 23, 26 Finding 6. In response, the VE provided extensive testimony and the VE responded to Plaintiff's attorney's questions to clarify the meaning of "low stress jobs." R. 469-70. Contrary to Plaintiff's contentions, the VE did not claim that all unskilled jobs are low-stress by

-8-

nature, but that low-stress jobs would typically not involve more than one or two step tasks; he never equated "low-stress work with the skill level of that work." R. 465-70. If there had been confusion on that point, Plaintiff's attorney could also have asked more questions to clarify the matter. The ALJ's decision was based on substantial evidence.

### B.     Mental RFC and "fair" limitations

Plaintiff claims that ALJ erred in endorsing Dr. Lewis's opinions of Plaintiff's mental limitations (R. 22, 26), but then failing to include all of them in his mental RFC and the hypothetical question to the VE. R. 465. The Commissioner does not dispute that the ALJ relied heavily on Dr. Lewis's opinions, but contends the ALJ did not err in applying only those limitations of Plaintiff's mental condition which limited him to low-stress work and limited contact with the public.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings

and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

The Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

Dr. Lewis rated Plaintiff's work-related functional limitations in many areas using definitions the ALJ provided, with "good" meaning more than satisfactory; "fair" meaning limited but satisfactory functioning; and "poor" meaning seriously limited but not precluded. R. 428-31. Dr. Lewis opined Plaintiff was fair in following work rules, relating to co-workers, dealing with the public, using judgment, interacting with supervisors, maintaining attention and concentration, understanding, remembering, and carrying out complex instructions; maintaining personal appearance, behaving in an emotionally stable manner, relating predictably in social situations, and demonstrating reliability; but poor in dealing with work stresses. He rated Plaintiff "good" in functioning independently, and in understanding, remembering, and carrying out detailed and simple instructions. R 428-31. The only other limitation Dr. Lewis enumerated was that Plaintiff should be restricted to a "low-stress environment" and his dealings with the public should be "minimiz[ed]." R. 431.

The ALJ endorsed Dr. Lewis's opinions without qualification, stating:

In making this determination, the undersigned relied heavily on Dr. Lewis'[s] testimony which, as suggested by the Appeals Council, provided clarification with regard to the numerous medical opinions contained in the record, some of which were inconsistent. In an effort to avoid redundancy, the undersigned echoes Dr. Lewis's

>assessments regarding the medical opinions in this case. Drs. Wylie and Ludvigh both
>found the claimant incapable of maintaining employment due to his mental limitations
>and found the claimant markedly limited in several areas.

R. 22.

Plaintiff contends the ALJ erred in assessing Plaintiff's mental RFC and asking a hypothetical question which omitted the key opinions of Dr. Lewis that Plaintiff had only "fair" — defined as limited but satisfactory — abilities in following work rules, relating to co-workers, using judgment, interacting with supervisors, maintaining attention and concentration, maintaining personal appearance, behaving in an emotionally stable manner, relating predictably in social situations, and demonstrating reliability. and dealt only with limitations in dealing with the public, work stresses, functioning independently, and following complex, detailed, and simple instructions. Plaintiff contends that since the ALJ included Dr. Lewis's "fair" limitation on Plaintiff's dealing with the public (R. 429, 431), he also should have included in the mental RFC finding and hypothetical all of the limitations Dr. Lewis identified as "fair" abilities.

The Commissioner contends that the ALJ was not required to instruct a VE to assume conditions or limitations that the ALJ did not find credible or supported by the evidence and the VE's testimony was based upon a hypothetical question that fairly set out all of Plaintiff's credible limitations. Based on the VE evidence, the ALJ properly determined that Plaintiff could perform a significant number of jobs in the economy. R. 26, Findings 11-12.

The Commissioner argues that Dr. Lewis rated Plaintiff as "poor" or "seriously limited but not precluded" in only one area: his ability to deal with work stresses. R. 428-31. The remaining areas were either "good," *i.e.*, more than satisfactory, or "fair," *i.e.*, limited but satisfactory (R. 428-31) and it was not necessary for the ALJ to include the "fair" or "satisfactory" mental areas in

his mental RFC determination or hypothetical question. Plaintiff cites no authority for his proposition that, because the ALJ included a limitation on dealing with the public – a "fair" or "satisfactory" rating – the ALJ should have included *all* other categories with "fair" ratings noted by Dr. Lewis in the hypothetical to the VE. The Court agrees with the Commissioner that merely because the ALJ gave Plaintiff the benefit of doubt and included this limitation (even though considered "fair" or "limited, but satisfactory") in his RFC determination, it does not mean that Plaintiff was actually "restricted" in all other areas rated as "fair" or "satisfactory." The ALJ's hypothetical appropriately included only those mental limitations that Plaintiff could not perform "fairly" or "satisfactorily" and was based on substantial evidence.

### C.  VE testimony and the DOT

Plaintiff contends the ALJ erred in relying on "demonstrably incorrect" VE testimony that was inconsistent with the DOT. R. 470. The VE testified that his testimony was consistent with the DOT when asked about it by the ALJ. R. 470. Plaintiff contends the VE was mistaken about the DOT when he identified two "sedentary" and two "light" jobs having a "sit/stand opinion on 15-minute cycles" in response to the ALJ's hypothetical (R. 465-66). Plaintiff contends that not a single "sedentary" or "light" DOT job contemplates a sit/stand option. "Sedentary" work requires uninterrupted "prolonged" sitting at two-hour intervals and "light" work requires "prolonged" standing

and/or walking. SSR 96-9p; SSR 83-12. Plaintiff contends that, because the vocational expert did not even recognize that his testimony contravened the DOT, the VE failed to provide the "reasonable explanation" required by SSR 00-4p to justify the departure of his testimony from the DOT and thus, the ALJ's decision was not based on substantial evidence. The commissioner argues that the VE

discussed this limitation during the hearing and specifically stated that the sit/stand option would not erode the jobs identified because they were "position neutral" and an individual could sit or stand at will. R. 467-69.

Plaintiff points out that the DOT is an authoritative, but not binding, vocational reference source, citing 20 C.F.R. § 404.1566(d)(1) (2006); SSR 00-4p ("In making disability determinations, we rely primarily on the DOT (including its companion publication, the [Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)]) for information about the requirements of work in the national economy"). Plaintiff contends that in this case, the ALJ did not inquire about the DOT, as required, and the VE did not explain any departure from the DOT.

According to a SSR cited by Plaintiff, the ALJ is required to ask the VE specific questions about the DOT: "When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE evidence and information provided in the DOT." SSR 00-4p.

The Commissioner contends that Plaintiff's general claims that no DOT job contemplates a sit/stand option should be rejected because he offers no support for his argument that the jobs identified by the VE conflicted with any specific DOT section. The Commissioner argues that the DOT contains numerous jobs including the terms "assembler," "clerk," or "worker" in the job title, and the VE did not state or suggest he relied on only one particular DOT section to support his claim. By virtue of his attendance at the hearing, the VE was aware of Plaintiff's mental and physical limitations and still identified numerous jobs Plaintiff could perform. R. 465-70. The VE, as an expert, was in a much better position to determine whether his testimony was consistent with the DOT, and he testified that his testimony did not deviate from the DOT. R. 470.

The Court agrees with the Commissioner that Plaintiff has failed to specifically point to a DOT conflict with the VE's testimony that the jobs he identified were position neutral. Plaintiff has not shown that his mental or physical limitations would have prevented him from performing the jobs identified by the VE and accepted by the ALJ. The ALJ's hypothetical to the VE that included Plaintiff's limitations and the ALJ properly relied on the testimony of the VE to conclude that a significant number of jobs existed in the economy which Plaintiff could perform.

### *IV. CONCLUSION*

For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on September 7, 2007.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record